T.C. Summary Opinion 2010-33

UNITED STATES TAX COURT

PAUL THADDEUS BANACH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8039-09S.                    Filed March 22, 2010.

Paul Thaddeus Banach, pro se.

<u>Randall B. Childs</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax for 2006 of $25,000 and an accuracy-related penalty under section 6662(a) and (b)(1) of $5,000. The issues for decision are: (1) Whether lump-sum payments made by petitioner to his former wife in 2006 are deductible as alimony under section 215, and (2) whether petitioner is liable for the accuracy-related penalty. We hold that the lump-sum payments are not deductible as alimony and that petitioner is not liable for the accuracy-related penalty.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioner resided in the State of Florida when the petition was filed.

Petitioner and Deborah Banach (Ms. Banach) married in 1980. On July 12, 2006, petitioner and Ms. Banach entered into a Marital Settlement Agreement (the agreement). With respect to alimony the agreement states:

> 5. **ALIMONY**
> The husband shall pay to the Wife lump sum alimony as follows: $80,000.00 cash prior to the entry of the final judgment; and an additional $20,000.00 cash within 90 days after the entry of the final judgment; and an additional payment of $10,000.00 cash within 180 days after the entry of the final judgment. This payment satisfies the Husband's alimony obligation and

the Wife waives any other form of alimony (temporary,
permanent periodic, rehabilitative, etc.).  The payment
of these amounts is enforceable by contempt.

The agreement did not specify whether the lump-sum payments would terminate upon Ms. Banach's death.

On July 24, 2006, petitioner paid Ms. Banach $80,000.  That same day the Final Judgment of Dissolution of Marriage (the judgment) was entered in the Circuit Court of the Twelfth Judicial Circuit In and For Manatee County, Florida.  The judgment states, in part, that "[t]he Marital Settlement Agreement is approved and made a part of this Final Judgment by reference and the parties are ordered to comply with the same."

On October 20, 2006, petitioner paid Ms. Banach $20,000.

On his 2006 Federal income tax return petitioner claimed a deduction of $100,000 for "alimony paid" to Ms. Banach.  In determining whether the $100,000 lump-sum alimony was deductible, petitioner consulted an attorney and an accountant and called the IRS hotline.  Each person queried assured petitioner that the lump-sum alimony was indeed deductible.

In a notice of deficiency respondent determined the payments were not alimony and therefore disallowed the claimed deduction. Respondent also determined that petitioner was liable for the accuracy-related penalty based on negligence or disregard of rules or regulations.

## Discussion

### A.  Alimony Deduction

Generally, property settlements or equitable divisions of marital property incident to a divorce are not taxable events and do not give rise to a deduction.  Sec. 1041; Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000).  On the other hand, payments made or received as alimony or separate maintenance generally are deductible by the payor spouse under section 215(a) and includable in the gross income of the payee spouse under sections 61(a)(8) and 71.

The term "alimony" means any alimony as defined in section 71.  Section 71(b)(1) provides a four-step inquiry for determining whether a payment is alimony or separate maintenance. Section 71(b)(1) provides:

> SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income * * * and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Payments are deductible as alimony only if all four requirements of section 71(b)(1) are met.

Both parties agree that petitioner's payments to Ms. Banach satisfied the requirements set out in section 71(b)(1)(A), (B), and (C). Payment was made in cash, pursuant to a "divorce or separation instrument" as described in section 71(b)(2), and the payment was not ineligible for the sections 71 and 215 deduction/inclusion scheme. At the time of payment, petitioner and Ms. Banach were not members of the same household. The disagreement in this case is solely about whether the lump-sum alimony payments satisfied section 71(b)(1)(D), which requires that there be no liability to make any payment after the death of the payee spouse. Okerson v. Commissioner, 123 T.C. 258, 265 (2004). If the payor would remain liable for the payments after the payee's death, none of the payments are alimony. Sec. 1.71-1T(b), Q&A-10, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984).

In determining whether such an obligation exists, we first turn to the applicable instrument.  Gilbert v. Commissioner, T.C. Memo. 2003-92, affd. sub nom. Hawley v. Commissioner, 94 Fed. Appx. 126 (3d Cir. 2004).  Because the agreement is silent on whether the lump-sum payments would survive Ms. Banach's death, we look to State law to determine whether the payments would terminate by operation of Florida law.  Id.  In Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967), the Supreme Court of the United States addressed the means for determining State law in the context of a Federal tax case and stated that "the State's highest court is the best authority on its own law."

Florida's alimony statute specifically permits a trial court to award alimony in the form of periodic payments, lump-sum payments, or both.  Fla. Stat. Ann. sec. 61.08(1) (West 2006). "By definition, 'lump-sum alimony' is a fixed and certain amount, the right to which is vested in the recipient and which is not therefore subject to increase, reduction, or termination in the event of any contingency, specifically including those of death or remarriage."  Boyd v. Boyd, 478 So. 2d 356, 357 (Fla. Dist. Ct. App. 1985).  According to the Florida Supreme Court, an award of lump-sum alimony survives the death of both the obligor and the obligee.  See Canakaris v. Canakaris, 382 So. 2d 1197, 1201 (Fla. 1980); see also Fla. Stat. Ann. sec. 61.075(2) (West 2006); Filipov v. Filipov, 717 So. 2d 1082, 1084 (Fla. Dist. Ct. App.

1998). Thus, it seems clear that petitioner's lump-sum alimony payments to Ms. Banach would not meet the requirement of section 71(b)(1)(D) for deduction eligibility.

Accordingly, we hold that petitioner's deduction of the $100,000 paid to his former wife in 2006 was improper as it did not meet the definition of "alimony" under section 71(b)(1)(D).

B. Section 6662(a) Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the amount of any underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). The Commissioner bears the burden of production, sec. 7491(c), but, if satisfied, the taxpayer then bears the ultimate burden of persuasion, Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Section 6664 provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and

circumstances and can include reasonable reliance on the advice of a professional tax adviser.  Sec. 1.6664-4(b)(1), Income Tax Regs.

After considering the totality of the facts and circumstances, we are satisfied that petitioner, who consulted an attorney and an accountant and called the IRS hotline before claiming the deduction in issue, acted in good faith and comes within the reasonable cause exception of section 6664(c)(1). Accordingly, we hold that petitioner is not liable for the accuracy-related penalty under section 6662.

## Conclusion

We have considered all of the arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

To reflect the foregoing,

> Decision will be entered for respondent as to the deficiency in tax and for petitioner as to the accuracy-related penalty.