Daniel IACURCI, Nancy Iacurci, Eleanor Knight, and Eugenia Knight, individually and on behalf of similarly situated homeowners in Allegheny County, Pennsylvania, Appellants

v.

COUNTY OF ALLEGHENY, GLS Capitol, Inc., and Dynex Capitol, Inc.

Commonwealth Court of Pennsylvania.

Argued April 14, 2015.

Decided May 14, 2015.

Ralph N. Feldman, Pittsburgh, for appellants.

George M. Janocsko and Mandi Lea Scott, Pittsburgh, for appellees.

BEFORE: RENÉE COHN JUBELIRER, Judge, MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge.

OPINION BY Judge P. KEVIN BROBSON.

Daniel Iacurci, Nancy Iacurci, Eleanor Knight and Eugenia Knight, individually and on behalf of similarly situated homeowners in Allegheny County (Appellants),

appeal from an order of the Court of Common Pleas of Allegheny County (trial court) sustaining preliminary objections and dismissing their complaint. For the reasons stated below, we affirm.

Appellants filed a putative class action on behalf of owners of real property located in Allegheny County (the County) whose property has been subject to a tax lien filed by the County that the County has either retained or sold and assigned to GLS Capital, Inc. (GLS), and who have been billed by the County or GLS for attorney fees, interest calculated on a monthly basis, or prothonotary fees. Appellants' complaint challenged the constitutionality of the Act of August 14, 2003, P.L. 83 (referred to as Act 20), which amended the Municipal Claims and Tax Lien Act (MCTLA).[1] The County and GLS filed preliminary objections. After oral argument, the trial court sustained the preliminary objections and dismissed the case.

On appeal[2] to this Court, Appellants argue that Act 20 imposed new taxes that are unconstitutionally retroactive and impermissibly delegated taxing authority to a private entity. Alternatively, Appellants argue that if Act 20 does not impose new taxes, it violates Appellants' due process rights and is an unconstitutional taking of property under Article I, Section 10 of the Pennsylvania Constitution.

A brief history of the MCTLA and Act 20 and our courts' interpretation of the statute are instructive. Our Supreme Court in *Konidaris v. Portnoff Law Asso-*

---

1. Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§ 7101–7505.

2. When the constitutionality of a statutory amendment is challenged, our scope of review is plenary and our standard of review is de novo. *Konidaris v. Portnoff Law Assocs., Ltd.,* 598 Pa. 55, 953 A.2d 1231, 1239 (2008).

"[A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute clearly, palpably, and plainly violates the Constitution." *Id.* (quotation marks omitted).

*ciates, Ltd.,* 598 Pa. 55, 953 A.2d 1231 (2008), explained:

Between 1923 and February 1996, the MCTLA allowed for the imposition of an attorney collection fee of five percent for claims resulting in a verdict or default judgment. In recognition of the relative increase in legal fees over the century, the General Assembly in 1996 amended § 3 the MCTLA to allow for the collection of "reasonable" attorney fees, rather than limiting the collectable fees to five percent. The fee provision thus burdened the delinquent taxpayer with the reasonable attorney fees expended in collecting the taxes, rather than imposing the financial burden of collection on the municipality or school district. Pursuant to the dictates of the amendment, municipalities adopted ordinances and resolutions establishing a schedule of attorney fees.

Due to an apparent drafting omission, however, the statute as amended in 1996, spoke only to the collection of reasonable attorney fees for "municipal claims" rather than "tax claims." In March 2003, this Court held in *Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240 (2003), that § 3 of the MCTLA did not authorize taxing authorities to collect attorney fees on "tax claims" as opposed to "municipal claims" because the General Assembly failed to provide specifically for the collection of attorney fees expended in the collection of "tax claims."

In response, the General Assembly quickly amended the MCTLA to provide for the recovery from the delinquent taxpayers of reasonable attorney fees expended in the collection of "[a]ll municipal claims, municipal liens, taxes, tax claims and tax liens." 53 P.S. § 7106 (as amended by [Section 2 of Act 20] ). Moreover, the General Assembly specified that the amendment "shall be retro-

active to January 1, 1996." [Section 10 of Act 20.] The legislative history in both the House and the Senate indicate that the amendment was intended to address this Court's interpretation in *Pentlong,* and to provide statutory authorization for taxing authorities to collect reasonable attorney fees expended in the collection of tax claims as well as municipal claims. Senator Jane Orie explained the purposes of the bill:

First, the amendments to the Municipal Claim and Tax Lien Act clarify the rights of municipalities and those who hold rights from municipalities in the process of collecting all claims under this Act. This is especially important to Allegheny County because the Municipal Claim and Tax Lien Act is the principal statute that governs tax collection and municipal claim enforcement actions in the County.

Second, these amendments reaffirm the General Assembly's intentions since the passage of the Act almost 80 years ago. Namely that the recoupment of costs expended to retain competent, experienced legal counsel to enforce claims for payment of taxes is a legitimate expense that should be recoverable against the small minority of property owners who are tax scofflaws.

Third, these amendments streamline the process of enforcing claims for taxes under the Act. These changes add the important benefit of reducing the costs and expenses associated with these actions.

Legislative Journal–Senate, July 28, 2003, at 859 (statement of Sen. Orie).

*Konidaris,* 953 A.2d at 1233–34 (footnotes omitted) (some internal citations omitted).

In *Konidaris,* the Supreme Court considered the constitutionality of Act 20. In

that case delinquent taxpayers who failed to pay school taxes in the County argued that Act 20 violated the Remedies Clause of the Pennsylvania Constitution,[3] which forbids any act of the General Assembly from impinging on a vested right. The delinquent taxpayers argued that they had a right not to pay attorney fees incurred in the collection of taxes under *Pentlong Corporation v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240 (2003), because this right, in the nature of a defense, vested when the liens were filed, which was prior to the enactment of Act 20. The Supreme Court rejected this argument, finding that the delinquent taxpayers

> have not demonstrated that the retroactive validation of attorney fees incurred in the collection of taxes is a denial of "a remedy by due course of law" for "an injury done" or even a denial of an accrued defense to a cause of action for such injury. Accordingly, the Delinquent Taxpayers fail to demonstrate that the retroactive amendment of § 3 of the MCTLA "clearly, plainly, and palpably" violates the Pennsylvania Constitution.

*Konidaris*, 953 A.2d at 1243.

■ Appellants' first argument is premised on the assertion that Act 20 imposed new taxes. Appellants base this assertion on the amended definition of taxes in Act 20. Prior to Act 20, the MCTLA defined taxes as "any county, city, borough, incorporated town, township, school, bridge, road or poor taxes." *See* Section 1 of Act 20. Act 20 amended the definition of taxes, which now provides: "the word 'taxes,' as used in this act, means any county, city, borough, incorporated town, township, school, bridge, road, or poor taxes,

together with and including all penalties, interest, costs, charges, expenses and fees, including reasonable attorney fees, as allowed by this act and all other applicable laws." *Id.*; Section 1 of the MCTLA, 53 P.S. § 7101. Thus, Appellants argue, the plain language of Act 20 imposed new taxes. We disagree.[4]

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). A court must read the sections of a statute together, and construe them to give effect to all of the statute's provisions. *Id.*; *Roethlein v. Portnoff Law Assocs., Ltd.*, 623 Pa. 1, 81 A.3d 816, 822 (2013). "In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Roethlein*, 81 A.3d at 822.

■ While it is true that the plain language of a statute is generally the best indication of the legislature's intent, statutory provisions cannot be interpreted in a vacuum. When read in its entirety, it is clear that the MCTLA is not a taxing statute, but is instead a statute which sets forth the method by which delinquent taxes may be collected. Appellants' argument interprets the definition of "taxes" in isolation and ignores the broader statutory framework. Section 41 of the MCTLA declares that the intent of the MCTLA is to "furnish a complete and exclusive system in itself, so far as relates to tax and municipal claims." 53 P.S. § 7112. The substantive provisions of the MCTLA all address the processes by which a munici-

---

**3.** Pa. Const. art. I, § 11.

**4.** Because we conclude that the fees authorized by Act 20 do not constitute taxes, we need not address Appellants' arguments that

the taxes are unconstitutionally retroactive or that Act 20 impermissibly delegates taxing authority.

pality may go about collecting delinquent taxes or municipal claims. Many of these provisions provide for the collection of penalties, interest, costs, and attorney fees in addition to the delinquent taxes or municipal claim. *See, e.g.,* Section 3 of the MCTLA, 53 P.S. § 7106. If the legislature intended for municipalities to recover those costs by levying them as new taxes, these provisions of the MCTLA would be redundant. Thus, the most straightforward reading of the statute is that municipalities may recover the penalties, interest and costs of collecting unpaid taxes from delinquent taxpayers by including those penalties, interest, and costs in a tax claim filed pursuant to the MCTLA.

Appellants argue that Act 20 must be interpreted to impose new taxes because the new taxes were necessary to circumvent *Pentlong.* This, however, mischaracterizes *Pentlong* and Act 20. *Pentlong,* as discussed above, specifically held that attorney fees were not collectable on tax claims because Section 3 of the MCTLA only provided for the collection of attorney fees in connection with municipal claims. *Pentlong,* 820 A.2d at 1253–54; *see also Konidaris,* 953 A.2d at 1233 ("[T]his Court held in *Pentlong* . . . that § 3 of the MCTLA did not authorize taxing authorities to collect attorney fees on 'tax claims' as opposed to 'municipal claims' because the General Assembly failed to provide specifically for the collection of attorney fees expended in the collection of 'tax claims.' "). To remedy this, the General Assembly did not simply amend the definition of taxes; rather, the Legislature specifically amended Section 3 of the MCTLA to include not only municipal claims, but also "municipal liens, taxes, tax claims and tax liens." Section 2 of Act 20; Section 3 of the MCTLA, 53 P.S. § 7106; *see also Konidaris,* 953 A.2d at 1233 ("[T]he General Assembly quickly amended the MCTLA to provide for the recovery from the delinquent taxpayers of reasonable attorney fees expended in the collection of '[a]ll municipal claims, municipal liens, taxes, tax claims and tax liens.' " (second alteration in original) (quoting Section 3 of the MCTLA as amended by Section 2 of Act 20)).

Appellants then argue that the Supreme Court's opinion in *Konidaris* "already considered whether charges raised by the MCTLA amendments should be analyzed as taxes and held that they should be."[5]

5. Appellants quote the following passage from *Konidaris:*

> The Superior Court has noted a distinction between the application of the Remedies Clause in traditional tort and contract cases, and its application in tax cases, which is perhaps more applicable to the case at bar:
>
> > [T]the principle that the legislature cannot give retrospectively a right of action where none existed at the time of the occurrence out of which the alleged cause of action arises has no application to the imposing of charges in the nature of a tax. They are proceedings in rem; no feature of a contract relation exists and the omission of some detail of procedure does not establish in the owner of the property a vested defense available against a validating statute.

*Borough of Huntington v. Dorris,* 78 Pa.Super. 469 (1922) (distinguishing *Lewis [v. Pennsylvania R. Co.,* 220 Pa. 317, 69 A. 821 (1908)] as based on a contest involving a personal right and approving of a retrospective law validating a municipal lien despite flaws in the enactment of the relevant ordinance). This Court also echoed this holding in *Commonwealth v. Rockwell Mfg. Co.* [392 Pa. 339], 140 A.2d 854 (1958):

> The taxing power of the Legislature is very broad and includes power to enact taxes which are retroactive in effect as well as the power to retroactively increase taxes. Many Pennsylvania cases have sustained the exercise of this power and the United States Supreme Court has approved retroactive taxes since *Stockdale v. Insurance Companies,* 20 Wall. 323, 22 L.Ed. 348, 87 U.S. 323 (1874).

(Appellants' Br. at 18.) This, however, mischaracterizes *Konidaris*. *Konidaris* does not characterize the Act 20 amendments as taxes or otherwise. Instead, the Court discussed the Act 20 amendments in the context of the Remedies Clause. Far from declaring that Act 20 imposed new taxes, the Court simply noted that the traditional application of the Remedies Clause in cases of torts and contracts does not lend itself well to consideration of Act 20, and suggests that tax cases may "perhaps [be] more applicable" to Act 20. If anything, the Supreme Court's comment suggests that it does not view Act 20 as imposing a tax, because if it did, it would have said so and applied tax case law.

Next, Appellants argue that even if the Act 20 fees are not taxes, the seven-year retroactive period violates due process. Appellants rely on the Supreme Court's holding in *Commonwealth v. Budd Co.*, 379 Pa. 159, 108 A.2d 563, 569 (1954), which held that "a tax may not be retroactively applied beyond the year of the general legislative session immediately preceding that of its enactment; to provide otherwise constitutes a denial of due process." As discussed above, Act 20 is not a tax, and *Budd* is, therefore, inapplicable. Appellants argue that *Budd* somehow "sets the outer limit for constitutional retroactivity" for all statutes (Appellants' Br. at 25), but cites absolutely no authority supporting this proposition, either within *Budd* or beyond it. We, therefore, decline to extend *Budd* to non-tax cases.

■ Furthermore, the due process test for retroactive legislation is well established: "'a legitimate legislative purpose furthered by rational means.'" *Estate of Fridenberg v. Commonwealth*, 613 Pa. 281, 33 A.3d 581, 591 (2011) (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). In this case, there can be no debate that the collection of delinquent taxes is a legitimate legislative purpose. Similarly, it is entirely rational for the legislature to further that purpose by allowing municipalities to shift the cost of collection to the delinquent taxpayers, rather than forcing compliant taxpayers to bear the cost. This Court has previously acknowledged "an obvious and rational basis" for Act 20. *Konidaris v. Portnoff Law Assocs., Ltd.*, 884 A.2d 348, 356 (Pa. Cmwlth.2005) ("[W]e need not discuss at length additional arguments relating to a due process analysis of the 2003 Amendment, beyond acknowledging an obvious and rational basis for the General Assembly's attempt to cure a deficiency in the 1996 Amendment."), *rev'd in part*, 598 Pa. 55, 953 A.2d 1231 (2008). Thus Act 20 does not violate due process.

Finally, Appellants argue that Act 20 fees constitute an uncompensated taking in violation of the Pennsylvania Constitution's Takings Clause.[6] Appellants offer no support for this proposition. The only case cited by Appellants, *Airway Arms, Inc. v. Moon Area School District*, 498 Pa. 286, 446 A.2d 234 (1982), to the extent it references a taking at all, does so only in the context of taxes. Thus the *Airway Arms* is inapplicable to this case, because Act 20 fees are not taxes. Furthermore, Appellants do not cite any authority for the proposition that fees and penalties incurred for failure to pay one's taxes consti-

---

*Id.* at 856 (internal citation omitted). *Konidaris*, 953 A.2d at 1243 (first alteration in original).

**6.** Article I, Section 10 of the Pennsylvania Constitution provides, in pertinent part, "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

tutes a taking. We, therefore, decline to find that Act 20 fees constitute a taking.

Appellants have failed to demonstrate that Act 20 "clearly, palpably, and plainly" violates the Constitution and have, therefore, failed to carry the heavy burden necessary to overcome the presumption of constitutionality. For the reasons discussed above, we affirm the order of the trial court.

### ORDER

AND NOW, this 14th day of May, 2015, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.